MURPHY, Judge.
 

 *73
 
 After remand by our Supreme Court, Michael Antonio Bullock ("Defendant") has two issues to be considered on appeal. Defendant first argues that the trial court erred in denying his motion to suppress because his consent to search the rental car he was driving was not voluntary due to the stop's excessive scope and duration. Specifically, Defendant argues the stop was prolonged because of questioning by Officer John McDonough ("Officer McDonough") and due to the delay in waiting for a second officer. Defendant also argues that the trial court committed prejudicial error by accepting his guilty plea without informing him of the maximum possible sentence he could receive, in violation of N.C.G.S. § 15A-1022(a)(6). A detailed statement of the facts related to the traffic stop and Defendant's motion to suppress are stated in this Court's opinion at
 
 State v. Bullock
 
 , --- N.C. App. ----,
 
 785 S.E.2d 746
 
 (2016),
 
 writ allowed
 
 ,
 
 369 N.C. 37
 
 ,
 
 786 S.E.2d 927
 
 (2016), and
 
 rev'd
 
 , --- N.C. ----,
 
 805 S.E.2d 671
 
 (2017) (194A16). To the extent Defendant's remaining arguments rely on independent facts, they will be stated and analyzed separately.
 

 MOTION TO SUPPRESS
 

 On 27 November 2012, Defendant was pulled over by Officer McDonough, a K-9 handler with the Durham Police Department. Officer McDonough activated his emergency equipment and initiated a traffic stop after witnessing Defendant exceed the speed limit and commit other traffic infractions. After routine questioning, Officer McDonough asked Defendant to step out of the vehicle and for permission to search Defendant. Defendant consented. After searching Defendant, Officer McDonough placed Defendant in his car and ran database checks on Defendant's license. Officer McDonough continued to ask Defendant questions while waiting for the checks to finish.
 

 *74
 
 Officer McDonough asked Defendant if there were any guns or drugs in the car and for consent to search the vehicle. Defendant responded that he did not want Officer McDonough to search "my shit" (hereinafter Defendant's "property"). Officer McDonough then asked what kind of property Defendant had in the vehicle, to which Defendant replied that his property included a bag and two hoodies. Defendant then said that Officer McDonough could search the car, but not his property. After which, Officer McDonough called for backup explaining that he could not search the car without another officer present. Defendant asked what would happen if he revoked his consent, and Officer McDonough replied that he would use his dog to sniff around the vehicle. Defendant responded, "that's okay."
 

 A second officer arrived three to five minutes after the call for backup, and Defendant's unopened bag was removed from the vehicle. Officer McDonough began to search Defendant's vehicle. During the search, Defendant was seated in Officer McDonough's patrol car with the window rolled down. Officer McDonough then brought his K-9 to the vehicle and it did not alert to any narcotics.
 

 *716
 
 The K-9 next sniffed the bag and indicated to Officer McDonough that there were narcotics in the bag.
 

 Defendant argues that the trial court erred in denying his motion to suppress because his consent was not voluntary due to the prolonging of the traffic stop by Officer McDonough and by waiting for a second officer to arrive. Our review is limited by Defendant's brief "to issues defined clearly and supported by arguments and authorities."
 
 State v. Roache
 
 ,
 
 358 N.C. 243
 
 , 299,
 
 595 S.E.2d 381
 
 , 417 (2004) (citation omitted);
 
 see
 
 N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").
 

 Review of a motion to suppress is "limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) (citations omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding."
 
 State v. Chukwu
 
 ,
 
 230 N.C. App. 553
 
 , 561,
 
 749 S.E.2d 910
 
 , 916 (2013) (citation and quotation marks omitted).
 

 *75
 

 I. Prolonging of the Traffic Stop
 

 Defendant's argument challenges conclusion of law 2.
 

 That none of defendant's Constitutional rights, either Federal or State, have been violated in the method or procedure by which the traffic stop of defendant's vehicle was extended, the vehicle was searched, and defendant was seized and arrested on 27 November 2012.
 

 The Supreme Court of the United States has held that a traffic stop is limited by "the time needed to handle the matter for which the stop was made ...."
 
 Rodriguez
 

 v. United States
 
 , --- U.S. ----,
 
 135 S.Ct. 1609
 
 , 1612,
 
 191 L.Ed.2d 492
 
 (2015). The trial court's conclusion that the stop was not unlawfully prolonged was confirmed by our Supreme Court in
 
 State v. Bullock
 
 , --- N.C. ----,
 
 805 S.E.2d 671
 
 (2017) (194A16). The Supreme Court held that the initiation of the traffic stop to be lawful based on Officer McDonough's observations of Defendant's traffic violations.
 

 Id.
 

 at ----
 
 ,
 

 805 S.E.2d at 676
 
 . The Supreme Court held that Officer McDonough lawfully frisked Defendant without prolonging the stop.
 

 Id.
 

 at ----
 
 ,
 

 805 S.E.2d at 677
 
 . The Supreme Court also held that Officer McDonough's database checks on Defendant's license constitutionally extended the traffic stop.
 

 Id.
 

 Further, the Supreme Court held that Officer McDonough's conversation during the lawful stop were sufficient to form reasonable suspicion which authorized him to use his dog to sniff Defendant's vehicle and bag.
 

 Id.
 

 at ----
 
 ,
 

 805 S.E.2d at 678
 
 . Because all parts of the stop were lawfully extended, the trial court did not err in determining Defendant's consent to search his vehicle was voluntary.
 

 Defendant's argument also challenges conclusion of law 5.
 

 That defendant gave knowing, willing, and voluntary consent to search the vehicle. That at no point after giving his consent did defendant revoke his consent to search the vehicle.
 

 Consent given without coercion, "freely, intelligently, and voluntarily" allows an officer to reasonably search a vehicle anywhere that might contain contraband.
 
 State v. Baublitz, Jr.
 
 ,
 
 172 N.C. App. 801
 
 , 807-08,
 
 616 S.E.2d 615
 
 , 620 (2005) (citation and quotation marks omitted). "A warrantless search supported by consent is lawful only to the extent that it is conducted within the spatial and temporal scope of the consent."
 
 Id.
 
 at 808,
 
 616 S.E.2d at 620
 
 . "The temporal scope of a consent to a search is a question of fact to be determined in light of all the circumstances."
 

 *76
 

 State v. Williams
 
 ,
 
 67 N.C. App. 519
 
 , 521,
 
 313 S.E.2d 236
 
 , 237 (1984) (citation omitted).
 

 We hold that the evidence before the trial court supports the finding that Officer McDonough's search of the vehicle did not exceed the scope of Defendant's consent, and that Defendant's consent was knowing, willing, and voluntary. Officer McDonough explained to Defendant that he needed to wait for a second Officer to search his vehicle, and Defendant never revoked his consent.
 

 *717
 
 The only limitation that Defendant placed on Officer McDonough was to not search his property. Therefore, the trial court did not err in determining that Defendant's consent was voluntary.
 

 DEFENDANT'S GUILTY PLEA
 

 Pursuant to a plea agreement with the State, Defendant pleaded guilty to trafficking in heroin by possession of 28 grams or more, trafficking in heroin by transportation of 28 grams or more, and possession of a controlled substance with the intent to sell a Schedule I controlled substance (heroin). The trial court correctly informed Defendant that each trafficking charge carried a potential maximum punishment of 279 months but erroneously informed Defendant that the possession charge carried a potential maximum punishment of 24 months. The trial court told Defendant that he faced a total potential maximum punishment of 582 months. The transcript of plea contained the same erroneous information regarding the total potential maximum punishments. The trial court accepted Defendant's plea, and Defendant's pursuant convictions were consolidated into one active sentence for trafficking in heroin by possession of 28 grams or more to 225 to 279 months.
 

 Defendant petitioned this Court for a writ of certiorari on 10 August 2015, which was dismissed on 10 May 2016 "as moot per opinion." In order to comply with the Supreme Court's mandate and given the law of the case, we hold that the Supreme Court's opinion negated the prior mootness determination by our Court, and we independently exercise our authority to grant the writ of certiorari in order to review the judgment dated 30 July 2014.
 

 Defendant and the State acknowledge that the potential maximum sentence for a class H felony is 39 months.
 
 See
 
 N.C.G.S. §§ 15A-1340.17(c) - (d). The transcript of plea also reflects this 15 month error. The total potential maximum punishment that Defendant actually faced was 597 months, not 582 months as stated by the trial court and indicated on the transcript of plea. As a result, Defendant argues that the trial court violated N.C.G.S. § 15A-1022(a)(6) which states that a trial court may not accept a guilty plea from a defendant without addressing
 
 *77
 
 him personally and "[i]nforming him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge[.]" N.C.G.S. § 15A-1022(a)(6) (2017).
 

 "Our Courts have rejected a ritualistic or strict approach in applying these standards and determining remedies associated with violations of G.S. § 15A-1022. Even when a violation occurs, there must be prejudice before a plea will be set aside."
 
 State v. Reynolds
 
 ,
 
 218 N.C. App. 433
 
 , 435,
 
 721 S.E.2d 333
 
 , 335 (2012) (citation omitted). Errors resulting from a statutory violation require a showing of prejudice to a defendant.
 
 State v. McLaughlin
 
 ,
 
 320 N.C. 564
 
 , 568,
 
 359 S.E.2d 768
 
 , 771 (1987) ("We agree that the trial judge erred as defendant contends by not adhering to the requirements of the statute, but we find no error of constitutional dimension and hold that a new trial is unnecessary because there is no showing that the error prejudiced defendant.").
 

 A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.
 

 N.C.G.S. § 15A-1443(a) (2017).
 

 Defendant argues that this sentencing error was prejudicial and points to
 
 State v. Reynolds
 
 in support of his argument. In
 
 Reynolds
 
 , a defendant accepted a plea deal with a maximum sentence of 168 months.
 
 Reynolds
 
 ,
 
 218 N.C. App. at 434
 
 ,
 
 721 S.E.2d at 334
 
 . The defendant was subsequently sentenced to 135 to 171 months in prison.
 

 Id.
 

 Because defendant's sentence carried an additional three months of potential imprisonment due to attaining habitual felon status, this Court held that the voluntariness of the guilty plea was called into question and vacated defendant's convictions.
 

 Id.
 

 at 438
 
 ,
 
 721 S.E.2d at 336
 
 .
 

 Here, Defendant's reliance on
 
 Reynolds
 
 is misplaced and fails to recognize a critical
 
 *718
 
 distinction. In contrast to
 
 Reynolds
 
 , Defendant faced no additional time of imprisonment as a result of this error. Per agreement, Defendant's charges were consolidated into one sentence with a mandatory minimum and maximum punishment as set out in the applicable version of N.C.G.S. § 90-95(h)(4)(c). As a result, the trial court's calculation error did not affect the maximum punishment that Defendant received
 
 *78
 
 as a result of his plea. Further, Defendant fails to make an argument as to how the result of this case would have been different if Defendant had been informed of the correct potential maximum punishment. It would be a miscarriage of justice for us to accept that Defendant would have backed out of his agreement if Defendant knew that the total potential maximum punishment was 15 months longer on a charge that was being consolidated into his trafficking conviction.
 
 Reynolds
 
 did not create a per se rule requiring reversal. Reversal was appropriate in
 
 Reynolds,
 
 because "Defendant had been misinformed as to the maximum sentence he would receive as a result of his guilty plea."
 

 Id.
 

 at 437
 

 ,
 

 721 S.E.2d at 335-36
 
 . Here, Defendant has failed to show prejudice, and the trial court did not commit prejudicial error by accepting Defendant's voluntary guilty plea.
 

 CONCLUSION
 

 For the reasons stated above, we hold that the trial court did not err by denying Defendant's motion to suppress and did not commit prejudicial error in accepting Defendant's guilty plea.
 

 AFFIRMED IN PART AND NO PREJUDICIAL ERROR IN PART.
 

 Judge BRYANT concurs.
 

 Judge ARROWOOD concurs in result only.